IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00979-WYD-MJW


CHRISTOPHER JUDE SZKUTAK,

      Plaintiff,

v.

DEPUTY WILLIAM BENNETT,
DEPUTY JAIME KAFATI,
DEPUTY MATTHEW CUSHING,
DEPUTY DICK MONTOYA, and
DEPUTY JAMISON BROWN,

      Defendants.

---

**RECOMMENDATIONS ON
MOTION TO DISMISS BY DEFENDANTS BENNETT, CUSHING AND MONTOYA
(Docket No. 56)
and
MOTION FOR JUDGMENT ON THE PLEADINGS
BY DEFENDANTS KAFATI AND BROWN (Docket No. 57)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**


This matter is before this court pursuant to an Order of Reference to Magistrate

Judge issued by District Judge Wiley Y. Daniel on November 8, 2005 (Docket No. 21).

On May 31, 2005, the incarcerated plaintiff's *pro se* Prisoner Complaint (Docket

No. 3) pursuant to 42 U.S.C. § 1983 was filed along with a memorandum in support of

the Complaint (Docket No. 4), a motion to proceed *in forma pauperis* (Docket No. 1), a

2

motion for appointment of counsel (Docket No. 5), and memorandum in support thereof (Docket  6).  Those documents were dated March 15, 2005, were purportedly mailed on May 8, 2005, and were received by the court on May 19, 2005.

At that time, plaintiff named as defendants "Unknown Defendant #1, Unknown Defendant #2, and Unknown Defendant #3."  In his Prisoner Complaint, plaintiff alleged that on **June 27, 2003**, he was arrested on nonviolent misdemeanor charges and taken to the Denver City Jail where the defendants used excessive force, including pepper spraying him in the face and eyes, tazing him in numerous bodily locations, kneeing him in the sides, bearing down on his leg with a nightstick, restraining him, and lifting him up by the handcuffs behind him, causing a fractured wrist and other injuries. Defendants also allegedly refused to get him medical attention for his injuries.

On July 11, 2005, Magistrate Judge O. Edward Schlatter directed plaintiff to file an Amended Complaint which provided sufficient information about each defendant so that they could be identified.  (Docket No. 11).  Plaintiff was subsequently granted two extensions of time to file that amended pleading.  (Docket Nos. 15 and 17).  The order directing plaintiff to file such amended pleading, however, was subsequently vacated, and the case was drawn to a District Judge and a Magistrate Judge.  (Docket No. 19).

A status conference was conducted by this court on December 6, 2005, during which the court discussed with the pro se plaintiff his claim that he did not know and thus could not serve the unknown defendants.  Plaintiff stated that he believed two were in the booking station, and one was a sergeant.  The court informed the plaintiff that it would attempt to obtain counsel to represent him on a pro bono basis, and a

further telephone status conference was scheduled.  (Docket No. 25).  That conference

was held on January 10, 2006, during which an attorney was present who indicated

that he would be filing his notice of entry of appearance, and the court and counsel

discussed the necessary time to identify and serve the defendants.  (Docket No. 27).

Thereafter, however, plaintiff notified that court that that attorney would not be

representing him as the attorney had a conflict of interest.  (Docket No. 29).  A

Scheduling Conference was to be held on April 17, 2006, but that conference was

vacated, and the court directed the plaintiff to make efforts to determine who the

defendants are, and the court indicated that it would continue to seek counsel who

would take plaintiff's case on a pro bono basis.  (Docket No. 30).  Another status

conference was then set for May 19, 2006.  (Docket No. 30).

The following week, the pro se plaintiff filed a document dated April 18, 2006, in

which he requested from the "Civil Litigation Dept" the officers' names and badge

numbers as well as incident reports and any statements written by any staff member

about the June 27, 2003, incident.  (Docket No. 31 and 34).

A status conference was conducted by this court on May 19, 2006, during which

the court noted that an attorney had accepted plaintiff's case and should be contacting

plaintiff soon.  A further status conference was set for June 15, 2006.  (Docket No. 37).

Pro bono counsel entered their appearance on June 14 and 15, 2006 (Docket

Nos. 38 and 39).  A Status Conference was held on June 15, 2006, during which one of

plaintiff's new counsel stated that he may need to request a subpoena for the City of

Denver to determine the identity of the defendants.  A further Status Conference was

thus set for August 14, 2006, during which the court would inquire as to the status of

identifying the unnamed defendants, any need to amend the complaint, and the status

of service.  (Docket No. 40).  Before that conference, plaintiff, through counsel, filed his

Amended Complaint (Docket No. 43) in the defendants were identified.  The status

conference was held on August 15, 2006, during which a Scheduling Conference was

set for and was held on September 25, 2006.  (Docket Nos. 45 and 54).

Now before the court are two dispositive motions, namely, (1) a Motion to

Dismiss by Defendants Bennett, Cushing and Montoya (Docket No. 56) and (2) a

Motion for Judgment on the Pleadings by Defendants Kafati and Brown (Docket No.

57), both of which were filed on October 2, 2006.  The grounds for both motions are

defendants' assertions that the Amended Complaint is barred by the statute of

limitations and that the plaintiff has failed to exhaust administrative remedies as

required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).  Plaintiff filed

responses to both motions (Docket Nos. 74 and 75), and defendants filed a joint Reply

(Docket No. 78).  The court now being fully informed makes the following findings,

conclusions of law, and recommendation that both motions be granted.

"A motion for judgment on the pleadings is designed to dispose of cases where

material facts are not in dispute and judgment on the merits can be rendered based on

the content of the pleadings and any facts of which the court will take judicial notice."

Hamilton v. Cunningham, 880 F. Supp. 1407, 1410 (D. Colo. 1995).  "A Rule 12(c)

motion may be of particular value when the statute of limitations provides an effective

bar to a party's claims and the entire controversy could be disposed of by a pretrial

summary motion." Id.  When the Court reviews a motion for judgment on the pleadings,

> all well-pleaded material allegations of the opposing party's pleading[s]
> are to be taken as true, and all allegations of the moving party [that] are
> denied are taken as false.  Judgment on the pleadings may be granted
> only if, on the facts so admitted, the moving party is clearly entitled to
> judgment.

Id. (quoting Geltman v. Verity, 716 F. Supp. 491, 491 (D. Colo. 1989)).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all factual allegations in the complaint as true and resolve all reasonable

inferences in plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124,

1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A

case should not be dismissed for failure to state a claim unless the court determines

beyond doubt that plaintiff can prove no set of facts which entitles him to relief.  Hishon

v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46

(1957).

The parties are in agreement that state statues of limitations applicable to

general personal injury claims supply the limitations periods for § 1983 claims,  Beck v.

City of Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999), which in Colorado is

two years. § 13-80-102, C.R.S.; Workman v. Jordan, 32 F.3d 475, 482 (10th Cir. 1994).

In addition, the parties agree that the plaintiff's claims accrued on **June 27, 2003**, when

he knew of his injuries.  Furthermore, there is no dispute that the original Prisoner

Complaint was mailed to and received by the court prior to the expiration of the

limitations period, but that pleading did not identify any of the defendants.  It was not

until August 9, **2006**, that the plaintiff, through counsel, filed an Amended Complaint

6

(Docket No. 43) which for the first time identified five defendants by name.

Defendants assert that the Amended Complaint is barred by the two-year statute of limitations period because it was filed more than one year after the expiration of the limitations period. Defendants correctly assert that the Amended Complaint does not relate back under Fed. R. Civ. P. 15(c) to the date of the original Prisoner Complaint. See Garrett v. Fleming, 362 F.3d 692, 697 (10th Cir. 2004). Plaintiff, however, asserts that the statute of limitations should be tolled under the doctrine of equitable tolling, and, therefore, his claims should not be barred.

State law equitable tolling rules are applicable here. Id.; Phillips v. Harrison, 2005 WL 1773952, *1 n.2 (D. Colo. July 26, 2005). "Equitable tolling is applicable under Colorado law when 1) the defendant's wrongful conduct prevented compliance with the statutory periods; or 2) the plaintiff did not timely file his claims because of extraordinary circumstances. . . . Extraordinary circumstances are a basis for equitable tolling because 'it is unfair to penalize the plaintiff for circumstances outside his or her control, so long as the plaintiff makes good faith efforts to pursue the claims when possible." Gambina v. Dever, 2006 WL 894900, *1 (D. Colo. Mar. 31, 2006) (citation omitted).

Here, plaintiff first claims that on or about May 15, 2004, he sent a letter to the City and County of Denver requesting the names and badge numbers of the officers who beat him, along with incident reports and statements written by any staff member regarding the incident, but he never received a response to his letter requesting this information. Plaintiff claims he did not keep and thus has not provided the court with a

copy of this purported letter.  In addition, plaintiff states that he requested this

information from the Office of the Colorado Attorney General, Civil Litigation

Department, but "[t]his request also fell on deaf ears."  (Docket No. 74 at 7).

Consequently, plaintiff asserts that the defendants' wrongful conduct prevented him

from complying with the statutory period.

     Plaintiff further asserts that even if defendants' conduct did not prevent him from

filing his Amended Complaint and identifying the defendants, extraordinary

circumstances nevertheless prevented him from filing his Amended Complaint, and

thus the statute of limitations should be equitably tolled in these circumstances.

Plaintiff claims that

> although [he] knew he had been injured, he was unable, due to his
> incarceration, and particularly his 23 hour lockdown status, to obtain
> evidence necessary to determine who may be liable for his injuries.
> Notwithstanding his incarceration, [he] made reasonable efforts to
discover additional information about his case and to secure court-appointed counsel. .
. . [He] attempted to obtain information as to the identity of the Defendants from both
the City and County of Denver and the Colorado Office of Attorney General.  Moreover,
on May 31, 2005, [he] also filed a Motion for Appointment of Counsel noting, among
other things, the complexities of the case and the fact that he had virtually no
knowledge of the law.  Particularly significant, [he] noted his inability to investigate the
facts and identify the Defendants.  As of approximately March 15, 2005, [he] was
segregated from the general prison population with no access to the facility's law
library.  Also, persons who went to the Jail on [his] behalf to obtain information were
simply turned away.[1]  [He] repeatedly requested the Court's assistance to obtain pro
bono counsel, and the Court made efforts to do so.

>      Here, because [he] was in 23 hour lockdown during a portion of his
> confinement, he was at an even greater disadvantage than the *pro se*

---

[1]In a letter to Judge Daniel filed on November 21, 2005 (after the expiration of
the limitations period), plaintiff claimed that his family went down to the Denver City Jail
on an unspecified date and tried to get the officers' names, but they were just sent
away.  (Docket No. 24).

8

inmate in *White* [*v. Cooper*, 55 F. Supp.2d 848 (N.D. Ill. 1999)].  And as in
*White*, [he] made reasonable efforts to discover additional information
about his case and to secure court-appointed counsel.  Put simply, [he]
promptly and consistently made good-faith efforts to pursue his claims in
this case. . . .

    . . .

    Accordingly, in these circumstances, where . . . [he] acted diligently
and actively attempted to identify the Doe defendants and filed a motion
for appointment of counsel to assist him with this difficult process,
equitable tolling of the statute of limitations is warranted. . . .

(Docket No. 74 at 10-11).

    This court, however, is swayed by the defendants' argument that equitable

tolling does not apply in this case.  First, plaintiff has not established that there was any

wrongful conduct by any defendant which prevented him from identifying the

defendants prior to running of the limitations period.  Even assuming that plaintiff did, in

fact, mail a letter in May 2004 to the City and County of Denver, and there was no

response to his inquiry, the City and County of Denver is not a defendant in this action.

Likewise, the Colorado Attorney General, to whom plaintiff sent a request for

information <u>after</u> the running of the statute of limitations (in April 2006 - see Docket

Nos. 31 and 34), is also not a defendant in this action.  Plaintiff has not provided the

court with any authority for imputing any alleged wrongdoing by the City and County of

Denver and the Colorado Attorney General to the defendant deputy sheriffs in this

action.  Defendants correctly note that plaintiff has not alleged or shown that there was

any wrongdoing by the defendant deputy sheriffs in this case that would be grounds for

equitable tolling of the statute of limitations.

9

Furthermore, this court also finds that equitable tolling does not apply on the basis of extraordinary circumstances.  Plaintiff has not shown that extraordinary circumstances prevented him from timely identifying the defendants or that he diligently and actively sought to identify the defendants prior to the running of the limitations. The only effort he purportedly made prior to the expiration of the statute of limitations was in the alleged letter he claims to have sent to the City and County of Denver in approximately May 2004.  As noted by defendants, although plaintiff provided to the court copies of all of his other letters and documents, he failed to provide a copy of this letter to the court, and he claims he received no response.  He does not indicate the person, agency, or the address where he allegedly sent this letter.  Moreover, he makes no allegation of any other attempt to identify the defendants prior to expiration of the statute of limitations.  This court agrees with the defendants that "[t]his unsubstantiated allegation, concerning a single request for information about the defendants' identities which was made prior to the expiration of the statute of limitations, fails to meet [plaintiff's] burden of 'furnishing satisfactory proof' that the doctrine of equitable tolling should apply."  (Docket No. 78 at 6).

Furthermore, while plaintiff argues that "he was unable, due to his incarceration, and particularly his 23 hour lockdown status, to obtain evidence necessary to determine who may be liable for his injuries" (Docket No. 74 at 9), he fails to note in his argument that he was not in custody during the entire limitations period.  He states in his affidavit that he was released from the Denver City Jail in the early morning hours on June 28, 2003, which was the day after the alleged incident, and was not re-

arrested until approximately one month later.  (Docket No. 74-2 at 1, ¶¶ 5 and 6).

Furthermore, he was not placed in administrative segregation, 23-hour lock down, until

March 15, 2005, which was almost 21 months after the alleged incident at the Jail.

Plaintiff's mere incarceration during the 20 months prior to his placement in

administrative segregation should not constitute extraordinary circumstances

warranting the equitable tolling of the statute of limitations.  If that were the case, the

limitations period would be rendered meaningless in the numerous prisoner cases filed

in this and other courts.  Plaintiff has simply not shown that he made "good faith efforts

to pursue the claims when possible."  Gambina v. Dever, 2006 WL 894900, *1 (D. Colo.

Mar. 31, 2006) (citation omitted).  Instead, he essentially sat on his hands until the

month before the expiration of the limitations period at which time he finally

commenced this action against unknown defendants and sought appointment of

counsel.  See Phillips v. Harrison, 2005 WL 1773952, *1 n.2 (D. Colo. July 26, 2005)

("Where a plaintiff has options on which he does not act, he has failed to act in good

faith and equitable tolling cannot apply.").

Based upon this finding, this court has not addressed defendants' additional

argument concerning exhaustion of administrative remedies.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Dismiss by Defendants Bennett, Cushing

and Montoya (Docket No. 56) be **granted**.  It is further

**RECOMMENDED** that the Motion for Judgment on the Pleadings by Defendants

Kafati and Brown (Docket No. 57) be **granted**.

11

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: February 28, 2007                          <u>s/ Michael J. Watanabe</u>
          Denver, Colorado                          Michael J. Watanabe
                                                                United States Magistrate Judge